The question before this court today is whether the appellant has a right to loss wages related to the cyber position. On this issue, the trial court made the pertinent finding below that, quote, on this record, it would be too speculative to conclude that Odie and I would have selected Hannah for the cyber position if she had been allowed to take leave on April 9th. This means whoever had the burden below failed to prove the matter and they should have lost the case. The court's recent decision in the Roberts v. Eastam West Virginia LLC case makes clear that the ultimate burden should have been on the employer in a case like this when you're Therefore, when the trial court placed the burden solely on Hannah, the plaintiff below, the lower court erred as a matter of law and this court should reverse the decision. For an FMLA interference claim, an employee must prove three things. One, that they are entitled to an FMLA benefit. Two, that the employer interfered with the provision of that benefit. And three, that the interference caused harm. Hannah easily prevailed on the first two elements. And on the third element, she showed, and I'm quoting, testimony from Mr. Ewing below, in making the cyber hiring decision, Odie and I considered the attendance issues Hannah had in April 2015. It's Joint Appendix, page 86. It was these April attendance problems, during what we have called in our brief, the interference period, that were directly caused by Odie and I. And the reason why this was an interference that caused harm is because Odie and I then considered the interference period attendance issues against Hannah in the hiring decision. And at that point, the burden should have shifted to Odie and I to show, as this court said in the Roberts case, that to avoid liability, they must show it would have taken the contested adverse employment action, regardless of the employee's FMLA predicted. Counsel, if I could interrupt you. I mean, certainly there are a lot of cases, Roberts and others, where we employ a burden shifting type analysis on liability. And my memory of that's what Roberts was really about, is whether there was FMLA liability. Here, the court found liability as a matter of law, and we're talking about damages. So what's the basis for saying a plaintiff, once she has established liability, as occurred here, doesn't have the burden of proving her damages? Your Honor, I think that was one of the many errors made by the trial court, to say that the issue is one of damages. It's not an issue of damages. Third element that I just read from the Adams v. Anne Arundel case is a liability question. The plaintiff has the burden to show the interference caused the harm. So you don't, meaning, the approximate cause that we would have had to show that the harm, the approximate cause of the harm, led to the damage. The court made clear below that this was an approximate cause question. And I think there is some dispute over whether the approximate cause is a liability issue or a damages issue when you look at case law. But I think the consensus is the approximate cause spans both liability and damages. And what the court was really doing was, was reversing herself, because the trial judge said at the end of the trial that we had won on liability, then she came back in the final opinion and said, no, well, you didn't prove the damage, but it wasn't a damage question, Your Honor. It was an approximate cause question, which is properly, under FMLA interference, is properly looked at as a liability issue. Going to the damages, does appellant seek consequential or direct damages? Neither, Your Honor. I think that's a complicated question. Well, let me, again, let me back up. What does, okay, what does plaintiff, what damage does plaintiff? Appellant seek? Yeah, I mean, the specific answer is we're seeking the lost wages related to the cyber position. And yes, they are consequential, a consequential harm, and in that sense, consequential damages. I just want to be careful, though, because the trial court misused that term in this context, in the FMLA interference context, saying that you can't seek consequential damages under FMLA interference. But that's not accurate. With those cases it said that it looked at consequential damages, they were talking about non-monetary issues, not lost wages, stuff like emotional distress. So here, we're seeking solely lost wages, only lost wages, related to the cyber position. And they are a consequential harm. So you agree, well, do you agree that consequential damages are not available under the Act, first of all? I do not. And the Supreme Court decided that in the Ragsdale case, it said that damages must be consequential. And since that, they must be connected to the harm that was created. It's kind of interesting, the way that's been used. I mean, if you think in the traditional breach of contract sort of case, that's where that term comes up. It seems like that phrase is being used a little bit differently than the normal breach of contract case by both the Supreme Court, and I'm certainly not saying that's wrong. Anyway, it just seems like we're talking about consequential damages in a way we would not have learned in contract class in first year law school. I agree, Your Honor, and I believe that's what threw off the trial judge. I mean, she really became the first trial court to dig into the issue of these consequential damages. She then applied a test looking at intervening, superseding causes, really complicating the issue. Isn't our Klein and our Dotson case, doesn't, if you look at those, doesn't it refer to damages like you're seeking here as front pay? And it declares or it's held that those are equitable damages. And that wasn't really addressed. You didn't seek them in that fashion, I don't think, but that got raised in the motion to reconsideration and the court addressed those there. Why wouldn't our Dotson and Klein cases, which talk about front pay as equitable remedies, be a way we look at this? Right, Your Honor. I wish I could cite the case, but as I was preparing for this hearing, I actually came across a case, a court-circuit case, that defined this. And what it said was back pay is all damages sought up until the day of trial, and then everything from there is front pay. It's true, and this is just general law for FMLA interference, that normally, this was a U.S. government case, so we didn't have the luxury of a jury at all, but normally the way this works is, you go to a jury with your back pay, which is all lost wages, up until the court date, and then the front pay, which is an equitable claim, and it's up to the discretion of the judge, is all damages sought going forward. So we're talking about back pay because this case took so long to get to trial that I think we only sought back pay. Actually, that's not true, Your Honor. We sought mostly back pay and a few years of front pay. Is your position this isn't front pay? It is not. If we disagreed, I think as you said, that's an equitable matter to the discretion of the judge. The law is clear. If it is front pay, it's equitable. And obviously I lose because the trial court said she wasn't going to give equitable relief. But this is not equitable. It's money damages, it's back pay from the day of trial. If this is a damages question, kind of back to the first point I raised, and you kind of said, well, it's approximate calls versus damages, those overlap. I understand that argument. But to the extent we're talking about damages, it seems like the standard for damages, whether we're in the ADA or Title VII retaliation where you use damages like because of. The courts have consistently, including ours, said that's just a but-for causation stand. And the district court may not have used that sort of analogy and phrases, but that's basically where the court came down and did the analysis. And I'm just trying to see why that's wrong. I mean, I certainly understand you got arguments that the failure to take leave was a good cause. But the district court talked about other evidence that is pretty similar to what we did in our first decision here and says, look, there's just evidence on the other side. Why aren't we just in that sort of situation? Yeah, a but-for cause like we are in all these other federal statutes. Right. Your Honor, that's a complicated question in some ways. I would agree with the court that the trial court did apply a but-for cause analysis to this case and put the burden solely on my client. I don't think there's any dispute that's what the trial court did. But it's wrong because we're in a category of FMLA, what are called not just interference cases, but entitlement cases. And the courts, the Thornberry Court out of the Eighth Circuit, have looked at this and they said, is FMLA interference actually a strict liability case? Because the way the courts read, and even Roberts had language to this effect in this decision, this court's decision of Roberts, it's basically if you violate the FMLA, the plaintiff is entitled to their damages. We're in a really narrow subset of cases now that are these termination or lost job cases, like Hannah has here. Very narrow set where it's not just the plaintiff has to show, you violated my FMLA, I win, I get damages. But the court has said, well, wait a minute, sometimes a termination can be legitimate. So we're going to put the burden on these narrow subset of cases back on the employer. It's really a benefit to the employer, right? Because otherwise it's almost a strict liability consideration. Not quite, but almost. And now it's saying, you know, look, we're going to help the employer by giving them one more chance to show they would have made the same decision regardless of the fact that they considered this FMLA interference. It's a unique set of cases. The most clear analog, though, Your Honor, would be the Title VII discrimination cases. That has language in that part of the statute that says it's, I forget, you know the language better than me, but it has different language. All the cases that have the language like we have say it's but for causation. And only in the status cases under Title VII where I think it's a, what's the word? Same decision. Motivating factor. It's got actual language shifting it. Otherwise we've got all these cases say we just talk about but for causation. Right. The reason I believe, and I looked into this issue myself, I mean, let me just say it this way. All courts, including this circuit, have found that there is this burden shifting in FMLA interference cases on these narrow subset of cases, just like the Roberts case. I just got to keep stopping you. I want you to answer, but that's in establishing liability, not improving damages. Well, Your Honor, I would say to the court, I mean, it was like the trial court said to us. You win. You showed that the interference led to the loss of the cyber job. That's what the court said. But you get zero damages. I mean, that's under the court's reasoning. That's what the lower court would have said. But that makes no sense, right? What kind of theoric victory is that if they're like, well, you won, but you get nothing? Because we can't apply the same decision test on damages, but we could have applied it on liability. That happens all the time in the law. You win on liability. Someone violated a duty, but you can't show damages other than amounts that aren't as much as you'd like. But the issue here is, and the ultimate question really is, what does the plaintiff have to show to prevail? And what we're saying is, you just have to show they considered your FMLA interference, and then they have to show that they would have made the same decision. And it should have happened at the liability level, right? That's where the trial court should have made that decision. Instead, the trial court basically said, well, you win on the cyber. Now write your briefs on mitigation of issues or damages. It jumped over the same decision test. But it should have been at the liability level, Your Honor. All the cases that have addressed this, all the circuits have said it happens at the liability level. And if you prevail at the liability level, then you've won. You've shown proximate cause by establishing the prima facie case, and then the employers got to prove they would have made the same decision. So I think the FMLA interference, the entitlement statutes make it very clear these damages are almost to be presumed. And it's the employer's burden to show they would have made the same decision. And it's not fair to Hannah to say, well, this got screwed up at trial because the trial judge said you won on liability, only to come back on a post-trial brief and say, well, yeah, but I'm going to give you no damages. It's the same analysis that should have happened at the liability level on proximate cause. I see I'm running low on time, and Judge Quattlebaum mentioned also the issue of the mandate. I obviously think it's the same panel here, so I would defer to the panel's opinion or thoughts on their opinion the first time. But I would say, as far as the law of the case doctrine goes, you don't reach things you don't talk about in one opinion. And in the first opinion, there was nothing about these damages being inappropriate under FMLA interference. And so I do not think the court reached that in the first opinion. It should be reached this time in this court's opinion. I believe I'm out of time. Thank you. Thank you, Mr. Boston. Ms. Lopez? May it please the Court, Carolyn Lopez on behalf of the government. I wanted to start off by discussing the question that seems the most teed up, which was, how does the burden-shifting work at the damages stage as opposed to the liability stage? And so the Roberts case that was raised in the Monroe Ply Brief, that's quite clearly a liability stage case. And under the Supreme Court's governing precedent in Babb v. Wilkie, the Supreme Court has made quite clear that regardless of what happens at the liability stage in these types of statutes, so that was an ADA case, in these types of statutes, it's always the plaintiff's burden to show but-for causation for the adverse employment decision. And so under Babb v. Wilkie, that answers the damages question that sort of is left open by Roberts as to what then happens at the damages stage. And that's also consistent with the Supreme Court's governing case in Gross v. FBL. And so that's at page 180 of Gross. And sorry, the pin site for the prior case is 1177-78. At page 180 of the, first at page 176 of the Gross case, the Supreme Court says, the ADEA language in that case was because of. And so at page 176, the Supreme Court says the because of language is like by reason of, which is the language that's used in the FMLA damages provision, which is different and distinct from the language in the FMLA liability provision. And that's why there's a difference in terms of how the burden works. And then at page 180 of Gross, the Supreme Court said that it's always the plaintiff's burden to show that the consideration of the prohibited factor was a but-for cause of decision. And the Supreme Court specifically rejected the contention in that case that if the prohibited factor had been sort of a motivating factor, and there was some evidence of that, that that would be sufficient. And so under that governing law, what the district court did here was absolutely correct in terms of how she placed the burden. Aside from the burden, what's your position on the damages that appellant seeks and whether they're available under this statute? I want to make sure that I am understanding your honors question. Go ahead. We think that in this particular case, in light of the factual findings that the district court made, that this court doesn't need to address whether, in this particular context, those would be sort of classified as consequential damages or direct damages because it sort of doesn't matter in light of the dispositive factual finding that the district court made here correctly under the BAD-D-WILD-B standards. Ms. Lopez, what factual finding did the district court make that makes you say that they didn't reach the but-for causation? Let's assume you're right. It is but-for. What fact that was found by the district court that would make you conclude it was not met here? Sorry. Thank you, Your Honor, for the opportunity to clarify. The district court applied the but-for. We agree that the district court applied the but-for causation standard. But what facts in this case suggest that that was correct? That the decision was not clearly erroneous based on the facts in the record, Your Honor? Absolutely, Your Honor. I think that that was particularly on a clear error standard where the question is not whether or not the court sitting de novo would agree with the district court. The district court cited ample evidence that aligned with this court's decision, for example, at page 3. What's the ample? I'm just giving you an opportunity before I weigh into you as to what facts do you suggest that make it clear that it's not erroneous? Yes, Your Honor. So, again, keeping in mind that the standard is that it is plaintiff's burden to show that it is. No, no, you know what? No one wants to talk about the facts in this case because the facts make this case, to me, very simple. That's what I want to get. Tell me the facts that support the decision that she wasn't entitled to damage. Yes, Your Honor. Absolutely, Your Honor. Yeah. So the facts are, as this court recognized at page 334 of its prior opinion. The prior opinion didn't deal with interference, okay? Let's talk about the interference. Yes, Your Honor. But it does have to do with whether or not the district court's decision that the decision makers' consideration and knowledge of the pre-leave conduct, so her conduct that required a referral, an EAP management referral to EAP was significantly serious enough that that altered his impression of her, and he, quote, and this is at JA 318, simply was not interested in hiring her thereafter. But, counsel, that's the problem in this case. She should have never been referred to EAP. Matter of fact, it was mandatory. It was mandatory. They knew all along. This case, to me, turns logic and justice on its head. She was assigned one of the most important cases in America at the time. She was chosen to lead the investigation about Snowden, answering the White House questions, Congress questions. She led multi-agency investigations into that and did that, and dealing with depression issues back since 2011. And she worked through it for 18 months and did that. And then at the end of that, these things came upon her. They knew about her depression, major, severe depression. And she came to her psychiatrist and her counselor and said, you need to step down. Your brain needs rest. Four to six weeks. Didn't even tell her she was entitled to FMLA benefits. A woman who had done all this for her nation and then said, you go to EAP. Mandatory. That's like somebody coming with a broken leg and saying, you know, my doctor said I need to be off my knee. Go to EAP first and see what's wrong with it. We know what's wrong with it. And there's nothing in this record to contradict the evidence about her mental health issue. Nothing. And then you go to EAP and then the counselor talks about, oh, what's your real problem? Oh, she's really not satisfied because she hasn't gotten a permanent position yet. No medical evidence to support that at all. And then she said, we're going to put you on a plan where we're going to call you. People who are depressed don't show up. They're not late because they don't have a clock at home, an alarm clock. Can you tell me what facts suggest that you can do that to someone? Violating the spirit of Congress, not this court. We don't make the law. The law was made to protect people. This case is one of the most egregious cases I've ever seen in terms of MLA violations. Again, I'll ask you again. What are the facts that support that this was not a clearly erroneous decision on behalf of the district court? You give me the facts. Your Honor, I might, with the court's indulgence, if I might have it. I'm going to indulge you only to the extent that it will give you time to answer my question. Absolutely, Your Honor. So, again, the question of whether or not this was because of her depression was, of course, clearly decided in the prior case. It's undisputed. Is that correct? Is it undisputed that she had these significant medical health issues? Yes or no? Your Honor, I'm not, you know, we haven't disputed that she has depression. But the question is whether or not she can bear her burden to prove that she lost her cyber position because of that under an FMLA interference claim. And here, if I might just talk about the facts here. A wise professor of mine in law school said it's the facts that always determine what you need to do. You're trying to avoid those. Absolutely not, Your Honor. Well, for him, the facts was this. When they sent her to EAP, then that counselor went and told her, you know, it's really not the problem of medical condition. It's that she's having these issues about sour grapes and not motivated that. And that poisoned the tree. That poisoned the tree. And the little plan they came up with, they gave her two days. Oh, you're late. You didn't get here by 11. That's not going to work. And she was spiraling down, down, down, down, down, down. And it did influence her. The record is clear that it influenced her. Attendance was the only thing. She was getting brilliant, excellent, doing what she was working on, Snowden, all of those things. So that's not a question. The question was they sent her to AEP, and that became sort of like the subterfuge. She should have never been there. You tell me why you send a person to EAP, mandatory, when there's undisputed evidence that they need to be off four to six weeks for a serious medical condition. You tell me what law in this country said FMLA should be applied by in such an egregious way in this country. These facts. Your Honor, we're not disputing any liability findings that were based on FMLA. You are. You're disputing because you don't want to give her the consequences and the direct results of what you did. She lost a job because she went to EAP. They came up with another reason, other than medical, is why she's late. That is directly related to why she didn't get the job. She probably should have gotten the job anyway from a current position. I think I would have been frustrated, too, if I worked on one of the major cases like that for our nation, and then you can't get a permanent job. Is that correct? No, Your Honor. I respectfully disagree. Respectfully disagree with what? You haven't stated a fact yet. If I might actually talk about the EAP. I've given you a chance to answer my question. Counsel, don't talk over me. You had a chance. I've asked you the question over and over again. What facts? Yes, Your Honor. So the facts are that her attendance. Oh, the EAP facts. Go ahead. The EAP facts, which were written before her very first leave request when she declosed the depression. The facts of that EAP memorandum are she had increasingly erratic attendance, and this, again, is in the national security context. And the part, it's not just she sort of wasn't there during four hours so that her assignments had to be handed out to other folks. It's that in the national security context, if you don't show up at work, it's not sort of as if somebody's teleworking and you kind of don't know whether they're on their computer or not. It's imperative to notify your supervisors of your whereabouts so they know you're safe. And this is all documented in the EAP referral memorandum, which the district court, which both this court previously and the district court cite, it's documented as the decision-makers' knowledge that these issues were occurring as early as the January, February, March time frame. It's discussed at JA 306 of the district court's opinion. And so, again, Your Honor, I absolutely understand how a different fact finder might have come to a different conclusion, but that doesn't make the district court's beautiful analysis clear. But they're all related to her illness. But the question is. I don't understand it. She was sick. And you knew that her direct supervisor, the second-line supervisor, knew that she was having, right after he went there, he said, I think she's having depression issues. He said that all along. But this was in the February time frame. And now you just knew. We're like, oh, we have to know where she was. You knew where she was. She was someone who needed four to six weeks. And when she had the four to six weeks, if she came back, all that began to improve. And, again, the dial was cast to collect what came from the EAP. I don't know. Go ahead. You go ahead. I mean, it's unbelievable. Is there language in our prior opinion that you rely on for the argument you're making? Yes, Your Honor. So there's also language in the prior opinion. That's at page 334 of the prior opinion. And just sort of to cite to certain snippets of it. So by March 2015, now the leave request was April 9th, so after March 2015, of course. By March 2015, plaintiff's co-workers perceived her schedule to be erratic. She had racked up numerous unplanned absences, and she was unreachable for hours, often missing work and failing to return repeated phone calls. And so it was in that context that the agency thought it was a serious enough issue that there was a referral to EAP. And that exact time frame is why the district court held here that the decision makers, which again I think I cited JA306, she discussed how it wasn't just his knowledge of the EAP referral memorandum. He'd been sort of brought in informally to be apprised that this situation was happening before then. And that his mind was made up, and he was simply not interested in hiring her thereafter. And clarify that further on the reconsideration decision in saying that at core, and that's she was reviewing her own prior finding under also a clearly erroneous standard. At core, a plaintiff simply disagrees with the court's finding that Ewing's mind was made up not to hire a plaintiff with a federal position independent of the FLA interference. So counsel, if I could follow up. The finding of liability was that when she came I think in April, early April, they should have notified her of her FLMA rights. Exactly. And the district court found that they did not, and that violated the FLMA. Absolutely right. And as I understand the claim related to the cyber security job, it's that because they didn't do that in April, she had continuing attendance issues in April and thereafter that caused her that job. Yes, Your Honor. The district court, as I recall, just similarly to the way we addressed the retaliation claim, and I think that's not necessarily law of the case, that's a separate issue, but there's some at least context from that, that there were facts that predated the obligation to notify the plaintiff of the FLMA rights. And that's what it looked like the district court caused the district court to say, to me, to the court, it's too speculative to tie all this to the post-FLMA obligations. Yes, Your Honor. And the district court cites those on page 22 of the original order that are similar to what we cited in our initial opinion. That's exactly right, Your Honor. And I apologize, I'm going off of JA's sites at this point, so I'm not sure that they quite line up. But yes, Your Honor, Judge Brinkley and I did walk through those same factors. It could be, I mean, the case could have been prosecuted or pursued, and I can't recall, maybe it was, that the FLMA obligations began earlier. And if there had been a finding that the FLMA obligations began, say, in January, we might have a different case here. But what we have here is a case that the FLMA obligations began in April, and the claim is what happened in response to that. Absolutely, Your Honor. And the district court walks through why she rejected plaintiff's theories about why that later behavior, why those later issues changed the outcome. And, again, so the district court recently found on the record before or after Ferguson's trial. I want to go back to the burden of proof. If we conclude that the district court imposed an incorrect burden of proof, do you still have an argument as to how you would prevail or your client would prevail? We think that the district court's clarification on a motion for reconsideration, that the plaintiff simply disagrees with the finding that the decision was made independent of the FLMA interference, is sufficient to prevail under any standard. But we do also think that under Babb v. Wilkie and Gross v. FBL, it's crystal clear that at the damages stage, and, again, even in opposing the motion in limine at page 8 of that opposition, plaintiff made quite clear that they were relying on the cyber position, not as part of the liability phase of the FLMA interference, but just at the damages phase. And at the damages phase, Babb v. Wilkie and Gross v. FBL make clear that the district court, in fact, is by the absolutely correct standard here. But if we disagree, following up on Judge Sackler's question, how could we say that you prevail on damages if the burden was on you? The whole context of the district court's decision was that the plaintiff didn't meet their burden. I think that's an important question, but if we were to come to the conclusion that the burden is on the defendant, I mean, I don't see how we could say the current orders allow us to reach the conclusion that the burden had been met. If your honors disagree that Babb and Gross control here and require the plaintiff show but-for causation, including that the same decision would not have been made, then the government would not object to remand to the district court to apply the standard. I mean, putting aside whether or not any further – assuming no further proceedings were had after such a decision, the government would not – if the wrong standard had been applied, the government wouldn't object to remand in that context. Again, holding in reserve any decision about – Isn't there evidence in the record that Ewan said that he considered her spiraling down and increasing problems with attendance in April? He said he may have considered it differently had that been different or better. Is there not evidence in the record of that? Your honor, I want to just be very clear about which evidence we're talking about. So I believe your honor may be referring to JA-86, which is the question about the decision-maker discussing the conduct through April, and as the government has explained, because the FMLA interference was found to happen on April 9th, it was entirely appropriate for him to consider conduct through April means April 9th as well. And so – and it's not – I know that my friend on the other side reads that to mean through the very last day of April, but turning to JA-86, it's quite clear that – So, for example, he says, referring again to that EAP memorandum, that's what I'm thinking about. The EAP memorandum is, again, based on actions taken before and sort of formally issued on April 9th before the FMLA interference. And to the extent that there's sort of any doubt on clarity on what that means, my friend on the other side, after he had said all that, used that same through April language in a manner that makes quite clear that through April could refer both to the pre-April 9th conduct or post-April 9th conduct. And so it's not – it certainly wasn't clearly erroneous for the district court to, in that context, find that he was talking about that pre-April 9th. Well, and the discussions occurred before that when her supervisors clearly knew that she was having problems with depression, right? Was it not? Your Honor, the plaintiff has not appealed the decision, the district court's decision that April 9th was the date of the FMLA interference. And so employers are entitled to take into account conduct that occurs before FMLA interference because, as the district court explained, a damage cannot occur because of an FMLA interference issue if it's based on conduct that predated the FMLA interference. But putting this out, I guess, since justice may not have anything to do with the fact of the case, but it's just sort of an indulgement. Didn't they know that she had depression? Why wouldn't it start when they were aware that she should have been told? Wasn't the interference when you're not told? It starts when you're not – it's not – As we have argued throughout this litigation, the folks at the agency were not aware that there was – that the cause of this egregious conduct that required the EAP referral on April 9th was because of depression. And that was fully litigated in the prior appeal, Your Honor. If there are no further questions, I see I've exceeded my time, and I would ask that the courts affirm on either of the bases raised in our brief. Thank you, Ms. Lopez. Mr. Boston, you have some time reserved. Thank you, Your Honor. First, it sounds like the appellee agrees with us that it's a matter of law. Whatever the court decides on the burden of proof, we prevail, we go back on a remand. If we win on that issue, we don't prevail. Obviously, if we don't win on the issue. I would say, to Judge Quattlebaum's question earlier, I'm looking at the court's opinions, J.A. 318. What the court was focused on, and before quoting the court, the judge said, the evidence establishes that the proximate cause of Hanna's non-selection for the cyber position was Ewing's negative impression of Hanna. It's very clear to me that she was making the decision as to the proximate cause. The proximate cause should be considered at the liability stage, as I stated earlier. At that stage, the burden should have shifted. If I can speak to some of the questions of the court on this issue of factual findings of the lower court, this court said in the Rita Derris v. Wilkinson case, 990 F. 3rd at 356, the 2021 case, that when a factual finding is made in the application of an incorrect legal standard, it is not to be accorded any deference by this court. And there's virtually no question that the trial court, the judge lodged all of her factual findings in this proximate cause burden. She was saying, you've got the full burden to show but for cause, plaintiff, and under that lens that the judge was operating under, she came to the wrong factual findings. And so they should have no deference in this court as to factual findings. Is there a case, counsel, I mean, I understand your point that proximate cause, and we talked about it earlier, is this kind of, is it liability, is it damages? Is there any case that you have that talks about not whether you violated a statute? Let me phrase it that way. Sometimes saying liability damages may confuse things. But where the issue is not whether the statute has been violated, either FMLA or ADA or the retaliation of Title VII. And we're talking about the damages caused by it. Is there any case in that context that supports your argument? I'm not familiar with any particular case off the top of my head. I believe my argument aligns with all general principles of court law and everything else. I don't, this is not a damages question. When you're looking at damages, then it's really like a quantum question. The judge wasn't, that's not what she was considering. She wasn't like, should you get zero damages for the cyber position? I'm sorry, go ahead. Yeah, so I mean, it's just not that kind of question.  Did the plaintiff show that the proximate cause for cyber damages was this interference background? That's what the question was. And that is a liability question under the common court status for FMLA interference. It's interference that caused harm, the third element of a liability question. That's where the judge was. Now, the record's confused. I can understand that the judge's trial judge said below, no, it's a damages question. But that just wasn't right. That was incorrect, as a matter of law, Your Honor. Again, if I may say, and speaking to the facts, if the burden flips, then the question is, did the employer show, did Odie and I show, that they would have made the same decision? And the only evidence on that issue was twice Mr. Ewing was asked at trial the question, and I'll quote, if Hannah had eliminated her attendance and reporting issues in April of 2015, you likely would have hired her for the cyber position in June, correct? This is at JA 87. He says, that would have been a real possibility. And then he followed that up, JA 89, by saying, for the same question, I don't know, I really don't know what I would have done. It's as if Mr. Ewing was saying, if the burden is on us, we can't meet it. There's not a court in this world that should find, under those facts, if the burden was on the employer to show they would have made the same decision, that they could have gotten this wrong. And so I would say this court should not remand the case. It should rule in our favor if the burden was truly on the employer, and then it should send the issue back for that question of damages. What are the quantum of damages? Other than that, the case should be ruled on at this level. Unless the court has any further questions for me. Thank you, counsel. Thank you so much. Thank you both. We'll come down, Greek counsel, to proceed to our next case.
judges: Roger L. Gregory, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.